UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA


GWEN S. STUTSMAN,                       )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )   Case No. 11-CV-0207-CVE-TLW
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )


## OPINION AND ORDER

Now before the Court is the magistrate judge's Report and Recommendation (Dkt. # 17) recommending that the Court to affirm the Commissioner of the Social Security Administration's decision to deny plaintiff's claim for disability benefits. Plaintiff Gwen S. Stutsman objects to the report and recommendation and argues that the case should be remanded for further administrative proceedings. Dkt. # 18. Defendant has not filed a response to plaintiff's objection.

**I.**

Plaintiff applied for disability and social security income benefits on March 16, 2007, and she was 51 years old at the time of her application. She claimed that she was disabled because of back problems, osteoporosis, and high blood pressure. Dkt. # 10-6, at 6. Plaintiff's claims were initially denied on July 3, 2007, and her request for reconsideration was denied on October 12, 2007. Dkt. # 10-4, at 2-5, 4-16. The Commissioner found that plaintiff's medical records showed that she suffered from high blood pressure and that she complained of back pain, but the medical evidence did not establish that plaintiff was incapable of working. Id. at 3. Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was set for January 8, 2009. Id. at 20-24.

Plaintiff appeared at the hearing and was represented by counsel. Plaintiff testified at the hearing and the ALJ briefly questioned plaintiff about her past work history. Dkt. # 10-2, at 23. From 2000 to 2004, plaintiff worked as a waitress at various restaurants but she quit working in May 2004. Id. at 24. Plaintiff's attorney examined her about her limitations and plaintiff stated that her primary limitation preventing her from working was a back injury. Id. at 25. She testified that she injured her back in the 1980s and she subsequently re-injured her back, and she eventually stopped working in 2004 because of pain related to her back injury. Id. She estimated that she spent at least fifty percent of her day in a reclined position to limit her back pain, and she also took pain killers and muscle relaxants. Id. at 26. Even with her medication and limited physical activity, she stated that had constant pain in her back, and the pain occasionally increased from a dull, aching pain into a more severe and sharp pain. Id. at 26-27. Plaintiff is able to perform household chores for short periods of time, but she has difficulty standing and walking due to her back pain. Id. at 27-28. She estimated that she could stand for about 20 minutes and walk for about 30 minutes before she needed to rest, and she could sit in an ordinary, non-reclining chair for about 15 to 20 minutes before she needed to change positions. Id. at 28-29.

In addition to her back pain, plaintiff testified that she had other sources of pain that made it difficult for her to work. She complained of tenderness and numbness in her back, hips, and legs. Id. at 31. Plaintiff claimed that she suffered from poor blood circulation, and her arms regularly fell asleep due to problems with blood circulation. Id. at 31. She also complained of pain in her hands and wrists, and claimed that she frequently dropped things because of problems with her grip. Id. Plaintiff testified that she had been diagnosed with high blood pressure and she took blood pressure medication, but she occasionally felt faint or dizzy because of fluctuations in her blood pressure.

Id. at 32-33. Plaintiff explained that she can drive a car and she has a valid driver's license, but driving is difficult due to pain in her elbows and circulation problems in her arms. Id. at 36. Plaintiff has difficulty sleeping because she is unable to stay in one position for a significant period of time, and she sleeps approximately four to five hours per night. Id. at 37. Plaintiff testified that she spent most of her day in a reclining chair, but she would occasionally accompany her mother to the casino.

The ALJ called a vocational expert (VE) to testify as to plaintiff's ability to perform her past relevant work, and plaintiff's attorney had no objections to the VE's qualifications. Id. at 39. The VE characterized plaintiff's prior employment as a waitress as "light exertion," although plaintiff reported "medium exertion." Id. at 40. The ALJ asked the VE the following hypothetical:

> Assuming and [sic] individual who is 53 years of age, who has the equivalent of a High School education, and the past relevant work history you just described. If that individual were limited to light work, but if she, well light work, I'm sorry, as defined in the regulations, such that she could lift or carry up to ten pounds frequently, up to 20 pounds occasionally, could stand or walk up six hours a day, and could sit six hours a day. And if she were only able to sustain activity for about 15 minutes at a time, and then would need to rest, would she be able to any of her past relevant work.

Id. at 41. The VE answered that the individual in the hypothetical could not perform plaintiff's past relevant work or any other work. Id.

The ALJ issued a written decision denying plaintiff's claim for disability benefits. Plaintiff was insured through September 30, 2005 and had not engaged in substantial gainful employment since May 31, 2004. The ALJ reviewed the medical evidence and found that plaintiff had one severe impairment, specifically degenerative disc disease of the lumbar spine. Id. at 13. The ALJ noted plaintiff's testimony that she suffered from hypertension, but she found no evidence that "this impairment is severe as the claimant has no end organ damage or functional loss resulting from this

3

impairment." Id. at 13. The ALJ's decision reviewed plaintiff's testimony and found that plaintiff could perform the full range of light work as the term "light work" is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). She found that the evidence could reasonably be expected to support plaintiff's alleged symptoms, but she stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the residual functional capacity assessment (RFC) found by the ALJ. Id. at 15.

The ALJ reviewed plaintiff's medical records and noted that plaintiff visited a chiropractor in 1988 complaining of pain and weakness in her lower back and hips. Id. at 15. Jim Martin, M.D., evaluated plaintiff in 1993[1] and his examination revealed that plaintiff suffered muscle spasms and tenderness over the mid thoracic to lower lumbar musculature, with point tenderness over the sacroiliac joints. Id. at 15; Dkt. # 10-7, at 6-7. The ALJ next reviewed plaintiff's medical records from Morton Comprehensive Health Services (Morton Clinic), and she noted that Raeanne Lambert, D.O, wrote on November 24, 2004 that plaintiff was unable to work due to acute joint and back pain. Dkt. # 10-2, at 15. The ALJ did not discuss records from plaintiff's visits to Dr. Lambert from 2004 to 2008, and she saw Dr. Lambert approximately 16 times during that time frame. Plaintiff was referred for a consultative examination (CE) in connection with her application for disability benefits, and the ALJ reviewed the examiner's findings. As summarized by the ALJ, the examiner found that plaintiff had moderate difficulty getting up and down from a seated position and that she had a slightly bent posture, but she was able to perform heel and toe walking maneuvers and she could walk at 85 percent of expected speed. Id. at 15-16. The examiner determined that plaintiff's

---

[1] The ALJ incorrectly stated that plaintiff visited Dr. Martin in 1992, but the medical records show that he treated plaintiff in 1993. This typographical or scrivener's error has no impact on the Court's review of the ALJ's written decision.

4

grip strength was normal and she could manipulate small objects. Id. at 16. He characterized plaintiff's primary medical problems as chronic back strain and degenerative arthritis of the lumbar spine. The ALJ gave the examiner's findings "great weight" and found that plaintiff could perform the full range of work at the light exertional activity level. The ALJ stated that Dr. Lambert's 2004 opinion that plaintiff was unable to work was entitled to little weight, because Dr. Lambert's opinion did not identify any significant objective abnormalities and her opinion was contradicted by other objective medical evidence from the Morton Clinic. Id. Plaintiff also told the CE examiner that she had chest pain, but the ALJ found no medical records showing that plaintiff made similar complaints to any of her treating physicians. Id.

Based on her finding that plaintiff could perform light work, the ALJ determined that plaintiff was capable of performing her past relevant work as a waitress as the job is generally performed. Because plaintiff could perform her past relevant work, the ALJ found that plaintiff was not disabled and concluded her inquiry at step four of the five step analysis. The Appeals Council denied plaintiff's request for review and the ALJ's written decision serves as the Commissioner's final decision on plaintiff's request for benefits. See Id. at 2-4. Plaintiff filed this case on April 7, 2011, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge entered a report and recommendation (Dkt. # 17) recommending that the Court affirm the Commissioner's decision to deny plaintiff's request for benefits.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v.

Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

### III.

Plaintiff raises three objections to the magistrate judge's report and recommendation. Dkt. # 18. First, plaintiff argues that the ALJ failed to give adequate weight to the opinions of her treating physicians and other medical evidence in the record. Second, plaintiff argues that the ALJ's hypothetical to the VE failed to include all of her limitations. Third, she claims that the ALJ failed to make adequate findings to explain why the ALJ found that plaintiff's testimony lacked credibility as to the severity of plaintiff's symptoms. Defendant has not responded to plaintiff's objections.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir.2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step four of the analysis and found that plaintiff did not have an impairment that prevented her from performing her past relevant work. The step four analysis has three phases:

> In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).

The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if her decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff argues that the ALJ failed to give sufficient weight to Dr. Lambert's opinion that she was disabled, and the case should be remanded for further proceedings to allow the ALJ an opportunity to explain why Dr. Lambert's opinion should not be given greater weight. Dkt. # 18,

7

at 1-7. The magistrate judge considered these arguments, and he acknowledged that the ALJ did not give controlling weight to Dr. Lambert's opinion that plaintiff was unable to work. Dkt. # 17, at 10. However, he recommended that the Court find the ALJ's omission was harmless under the circumstances, because Dr. Lambert's opinion about plaintiff's ability to work was not an opinion about plaintiff's medical condition and it would not be entitled to controlling weight. He also stated that the ALJ's written decision provided sufficient explanation for her decision to give Dr. Lambert's opinions "little weight." Id. at 12-13. Plaintiff objects to the magistrate judge's recommendations.

Dr. Lambert worked at the Morton Clinic and treated plaintiff from 2004 to 2008. In November 2004 and July 2005, Dr. Lambert drafted letters stating that plaintiff was unable to work due to joint and back pain. Dkt. 10-7, at 42-43. Dr. Lambert also treated plaintiff 16 times from 2004 to 2008. Id. at 10-41. Plaintiff clarifies that she is not suggesting that Dr. Lambert's opinions about her ability to work should have been given controlling weight but, instead, she is arguing that the ALJ should have given these opinions greater weight. Dkt. # 18, at 2. She argues that the magistrate judge "overlooks" that the ALJ did not rely on the non-medical nature of Dr. Lambert's opinions and this is a post-hoc justification to support the ALJ's decision. Id. She also argues that the ALJ failed to discuss Dr. Lambert's assessment of plaintiff's limitations based on medical records from plaintiff's 16 visits to Dr. Lambert. Id. at 5.

In Social Security disability proceedings, a treating physician's medical opinion is entitled to controlling weight if "it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." Krauser v. Astrue, 638 F.3d 1324 (10th Cir. 2011) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th

8

Cir. 2000)). However, a treating physician's opinion on the ultimate issue of disability is not entitled to controlling weight, but the ALJ must state his reasons for accepting or rejecting such an opinion. See Knight v. Astrue, 388 Fed. App'x 768, 771-72 (10th Cir. 2010).[2] If the treating physician offers a medical opinion, the ALJ must engage in a two step inquiry to determine what weight that opinion should be given. First, the ALJ must determine if the opinion is well supported by medically acceptable clinical or diagnostic evidence and that it is consistent with other evidence in the administrative record. Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004). Second, treating medical source evidence is entitled to some deference, even if not controlling weight, and the ALJ must evaluate the evidence under the factors stated in 20 C.F.R. § 404.1527. Id.

Dr. Lambert wrote letters in November 2004 and July 2005 stating her opinion that plaintiff was unable to work "due to her acute joint and back pain." Dkt. # 10-7, at 42-43. The ALJ references the November 2004 letter in her written decision, but she failed to state whether she was treating Dr. Lambert's opinions as medical opinions or as opinions on the ultimate issue of disability. Dkt. # 10-2, at 15. The ALJ subsequently stated that she gave Dr. Lambert's opinions little weight because of the lack of objective evidence supporting Dr. Lambert's opinions. However, the ALJ fails to specifically identify what evidence she relied on when weighing the medical source evidence. Plaintiff saw Dr. Lambert 16 times between 2004 and 2008 and not one of these visits is specifically referenced in the ALJ's written decision. As the magistrate judge noted, the ALJ's failure to state whether she treated Dr. Lambert's 2004 letter as a medical opinion or an opinion on the ultimate issue of disability ordinarily requires a district court to remand the case for the ALJ to

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

9

conduct the proper inquiry. Dkt. # 17, at 10. The magistrate judge recommended that the Court apply harmless error analysis and supply the missing finding that Dr. Lambert's opinion on a non-medical issue is not entitled to deference, because this would clearly be the result if the case were remanded. Id. at 11.

The Court finds that the ALJ committed two significant errors when reviewing evidence of Dr. Lambert's treatment of plaintiff and her opinion that plaintiff was unable to work, and the case should be remanded for further proceedings. First, the ALJ failed to state whether she treated Dr. Lambert's November 2004 letter as a medical opinion or as an opinion on the ultimate issue of disability, and there is no way for this Court to determine if the ALJ applied the correct standard of review. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984). The ALJ should clarify on remand whether she treated Dr. Lambert's November 2004 and July 2005 letters as medical opinions or opinions on the ultimate issue of disability. Second, even if the ALJ appropriately disregarded Dr. Lambert's opinion on the ultimate issue of disability, the administrative record shows that plaintiff frequently visited Dr. Lambert for medical treatment and it is not clear if the ALJ considered this evidence when making her decision. The written decision does not specifically reference any of plaintiff's treatment records from Dr. Lambert, and this was a significant source of medical evidence in this case. The magistrate judge recommended that the Court apply harmless error analysis, because Dr. Lambert's opinions were clearly non-medical in nature and the result of the proceedings would remain the same even if the case were remanded. Dkt. # 17, at 11. However, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could

10

have resolved the factual matter in any other way" and this is not an appropriate case for harmless error review. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Even if Dr. Lambert's letters state a non-medical opinion, the ALJ should be required to state why she failed to give greater weight to opinions concerning the severity of plaintiff's impairment contained in Dr. Lambert's treatment records, and the Court cannot supply this finding in the first instance. The Court declines to reach plaintiff's other objections to the report and recommendation, because the ALJ's failure to describe her reasons for affording greater weight to Dr. Lambert's opinions is a sufficient reason to remand the case for further proceedings.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 17) is **rejected**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 9th day of July, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE